[Civ. No. 5186.   Fourth Dist.   Aug. 13, 1956.]

VIRGINIA ROSE PORTER, Appellant, v. H. M. PORTER, Respondent.

Kimball & Smith for Appellant.

Ray Miller for Respondent.

*Assigned by Chairman of Judicial Council.

BARNARD, P. J.—This in an appeal from an order denying a motion to vacate an interlocutory decree of divorce. The parties were married in 1948. About the first of December, 1954, the defendant returned to their home in the middle of the night and found the plaintiff and a "mutual friend" in what may charitably be referred to as a compromising position. On December 7, 1954, the parties entered into a written agreement disposing of all their property rights and claims upon each other. On January 4, 1955, the plaintiff filed this action asking for a divorce and that the property settlement agreement, which was attached to the complaint, be approved by the court and made a part of the decree. An interlocutory decree granting a divorce to the plaintiff was entered on January 13, 1955, in which it is stated that the property settlement agreement is fair, just and equitable, is approved by the court, and is made a part of the decree.

On July 5, 1955, the plaintiff filed notice of a motion to vacate the judgment, award the plaintiff a new trial, and allow her to file an amended complaint which was attached thereto. The only change in the proposed amended complaint was to allege that the parties owned certain community property and asking that such property "be equitably disposed of between the parties." The motion was heard by the court upon affidavits of the parties and others, and upon oral testimony. It was and is plaintiff's contention that she was prevented from having a fair trial because of her mistaken belief that the property in question was not community property, and that she signed the agreement waiving all interest in this property as a result of threats made by her husband, and believing his representations that this was his separate property. The court entered an order denying this motion. In a written opinion the court said:

"The only suggestion contained in all of plaintiff's testimony is that defendant stated to her that unless she entered into the contract and brought the action in the manner he desired that he would bring action for divorce and would make charges of her misconduct. She apparently concedes that there was at least some grounds for making these charges. There is every indication that if plaintiff had any community interest in any property that it was of rather small consequence. Plaintiff is a mature woman, and it appears from the evidence that it was her mature and deliberate choice to disregard and waive any possible claim she might have of any community interest and avoid any contested action. All

of these facts appear to be completely established by the testimony offered.''

On this appeal the plaintiff contends that the court had power under section 473 of the Code of Civil Procedure to relieve her from a judgment taken against her through her mistake or excusable neglect, and had an equitable inherent power to set aside a judgment secured by extrinsic fraud; that while a confidential relationship existed between them the defendant obtained an advantage over her by misrepresenting that she had no community interest in the property in question, and by exercising ''threats and adverse pressure''; that she did not have the benefit of a full, free and private preliminary conference with a lawyer in whom she had confidence; and that at no time prior to the execution of the property settlement agreement had she ever talked with her lawyer ''relative to any matter related to the agreement or the divorce action itself.''

The only evidence of intimidation or threats on the part of the defendant toward the plaintiff is that, on the morning after he discovered her and the mutual friend in the compromising position, he told her that he was going to commence an action for divorce and name the friend as the corespondent in an adultery charge. The plaintiff testified at the hearing that ''I told him I wanted to get an attorney to fight it and he said if I did he would make it nasty for me.'' At the hearing the plaintiff was asked, ''Tell me what it was that induced you to sign the complaint for divorce in the shape in which it is and to sign the property settlement agreement. What guided you and controlled you in so doing?'' and she replied: ''Well, for one thing I didn't want to have a lot of publicity over it, which Mr. Porter told me that I would have. That is the reason. And also I knew that my folks were very much against divorce and that I had a brother that passed away last year in May and I didn't want to bring any more trouble upon them than I possibly could.''

The plaintiff was employed in a bank in San Diego for 12 years, including the six years of their marriage. In his affidavit the defendant stated in some detail the circumstances in connection with his discovery of the plaintiff's misconduct. The facts so stated would have been ample to sustain a divorce on either the ground of adultery or the ground of extreme cruelty. At the hearing the plaintiff testified that these facts, as stated in the defendant's affidavit, were ''substantially

correct." This affidavit also stated that affiant agreed with his wife that she could sue him for divorce, without contest, provided she would execute a property settlement agreement waiving her claim to alimony, and waiving any claim on his separate estate consisting mainly of the property here in question.

With reference to the plaintiff's claim that the property now in question is community property the defendant stated in his affidavit that he had over $96,000 in cash in two banks at the time of the marriage, and the plaintiff testified that she thought he then had about $86,000. There is evidence that two months after the marriage the defendant bought one of the properties in question for $20,000, paying $10,000 with the balance payable at $300 a month, and that he paid the remaining $10,000 three months later. On October 5, 1954, the defendant purchased the other main property in question with $4,000 borrowed on life insurance he had had since 1938. A few monthly payments on these properties which were made from income therefrom may have included something as a result of defendant's services. The other property in question is an automobile, with little or no evidence as to the source of the payments thereon except that in the property settlement agreement the defendant agreed to assume and pay all indebtedness thereon. In any event the court's conclusion, that any community interest the plaintiff may have had in the properties in question was of small consequence, is fully justified. Further, if a divorce was granted for adultery or extreme cruelty, such property could be assigned at the court's discretion (Civ. Code, § 146).

The claim that the plaintiff did not have an opportunity to freely discuss matters with her attorney is not supported by the record. The evidence strongly indicates that the plaintiff was willing to waive any small interest she may have had in any community property in order to avoid a trial on a complaint filed by the defendant with the resulting publicity as to her misconduct, which she feared would jeopardize her employment at the bank. There is evidence that the parties agreed on the terms of the property settlement agreement before an attorney was consulted; and that the agreement was prepared at their joint request by the attorney who represented the plaintiff at the divorce hearing. The affidavit of this attorney states that he personally dealt with the plaintiff in preparing her complaint for divorce and in the consultation which preceded the drafting of the property settlement

agreement; that prior to the execution of that agreement the plaintiff told him that the property which she now claims as community property was the separate property of her husband, who had purchased it with money he had acquired prior to their marriage, and that she wished to make no claim whatever upon this property; that after drawing the agreement he and his partner met with the plaintiff and defendant, at which time he read the entire agreement to them; that he explained the legal effect of the material parts of the agreement and asked each of the parties in turn if they understood that, and if that was the way they wanted it; that each of the parties assented; and that he first learned that the plaintiff was dissatisfied with the agreement when this motion was made. In this connection, the plaintiff testified that this attorney was friendly to both parties, that she had complete confidence in his integrity, and that she had told him nothing of her misconduct. In her affidavit she stated that when she signed the agreement she was represented by counsel; and "that because of my husband's threats against me and because I was intimidated, I did not fully discuss the facts of this matter with my counsel. That my counsel acted in complete good faith in this matter. That I advised him that I had no interest in the above described property and that, if I had any such interest I desired to waive that interest."

The evidence fully supports the order made, no abuse of discretion appears, and it is difficult to see how the plaintiff could reasonably expect to have profited had her request for relief been granted.

The order is affirmed.

Mussell, J., and Burch, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.